## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| F-SQUARED INVESTMENT MANAGEMENT, LLC, et al., | Case No. 15-11469 (LSS) |
| Debtors | Jointly Administered |

| | |
|---|---|
| Craig Jalbert, in his Capacity as Trustee for F2 Liquidating Trust, | |
| Plaintiff | |
| v. | |
| Agnes Carol McClelland | Adv. Pro No. 17-50718-LSS |
| Ann Aghababian | Adv. Pro No. 17-50719-LSS |
| Charles Hart | Adv. Pro No. 17-50722-LSS |
| Geordie McClelland | Adv. Pro No. 17-50755-LSS |
| George McClelland | Adv. Pro No. 17-50758-LSS |
| Graham Hart | Adv. Pro No. 17-50767-LSS |
| Hazel McClelland | Adv. Pro No. 17-50772-LSS |
| Jacquelyn McClelland | Adv. Pro No. 17-50786-LSS |
| Lindsay Hart | Adv. Pro No. 17-50849-LSS |
| Lindsay McClelland | Adv. Pro No. 17-50850-LSS |
| McClelland Irrevocable Grantor Trust | Adv. Pro No. 17-50854-LSS |
| Quinn McClelland Hart | Adv. Pro No. 17-50859-LSS |
| Defendants | |

## REPLY IN SUPPORT OF MOTION TO DISMISS

## TABLE OF CONTENTS

Page

I.     BRIEF STATEMENT ...........................................................................................................1

II.    ARGUMENT.......................................................................................................................2

      A.     The Trustee cannot allege new facts which should have been pled in his Complaints, if at all, for the first time in his Opposition to a Motion to Dismiss..................................................................................................................2

      B.     The Trustee's valuation of the alleged liabilities arising out of F-Squared's indemnity contracts should be reduced by both the courts' dismissals of several claims, as well as by the fact that such claims were highly unlikely. ...............................................................................................................4

III.   CONCLUSION...................................................................................................................8

# TABLE OF AUTHORITIES

**CASES**

**Page(s)**

*Cont'l Bank, N.A. v. Burke,*
5 F.3d 545 (10th Cir. 1993) ...................................................................7

*F.D.I.C. v. Bell,*
106 F.3d 258 (8th Cir. 1997) ................................................................6

*In re Asbestos Prod. Liab. Litig. (No. VI),*
822 F.3d 125 (3d Cir. 2016) .................................................................3

*In re Oakes,*
7 F.3d 234 (6th Cir. 1993) ....................................................................6

*In re R.M.L., Inc.,*
92 F.3d 139 (3d Cir. 1996) ...................................................................6

*In re Virtus Partners, Inc., Securities Litigation,*
15-cv-1249 (WHP) (S.D.N.Y. 2015) ..................................................2, 5

*Matter of Xonics Photochemical, Inc.,*
841 F.2d 198 (7th Cir. 1988) (Posner, J.) ..........................................6-7

*Santomenno ex rel. John Hancock Tr. v. John Hancock Life Ins. Co. (U.S.A),*
768 F.3d 284 (3d Cir. 2014) .................................................................2

*Schuchardt v. President of the United States,*
839 F.3d 336 (3d Cir. 2016) ..............................................................2, 5

*Youngers v. Virtus Investment Partners, Inc,*
15-cv-8262 (WHP) (S.D.N.Y 2015) ...................................................2, 6

**RULES**

Fed. R. Civ. P. 12(b)(6)........................................................................2-3

George McClelland ("G. McClelland"), Charles Hart, Geordie McClelland, Graham Hart, Hazel McClelland, Jacquelyn McClelland, Lindsay Hart, McClelland Irrevocable Grantor Trust, Quinn McClelland Hart, Lindsay McClelland and Agnes Carol McClelland (collectively, "the McClelland defendants") and Ann Aghababian ("Aghababian" and together with the McClelland Defendants the "Defendants"), by their undersigned counsel, Potter Anderson & Corroon, LLP and McLane Middleton, Professional Association, hereby provide this Reply in support of their Motions to Dismiss all counts of the complaints (the "Complaints") filed in the above-captioned adversary proceedings by Craig Jalbert, in his Capacity as Trustee for F2 Liquidating Trust (the "Trustee").

I.    **BRIEF STATEMENT**

The Trustee seeks to recover almost $6 million from the Defendants, all of whom held membership interests in F-Squared and lost their entire investments when F-Squared failed.  The vast majority of the Trustee's claim—over $5 million—is based on F-Squared's quarterly distributions paid pursuant to F-Squared's Operating Agreement to cover estimated income taxes owed by the Defendants based on the "pass through" to their personal tax returns of F-Squared's estimated quarterly profit.  Given that the Trustee's case is at best incongruous, and, more pointedly, because he failed utterly to plead a plausible case, the Defendants moved to dismiss. The Trustee's response has been to improperly attempt to re-plead his Complaints without leave of Court via his Memorandum of Law in Support of Opposition to Motion to Dismiss [D.I. 30] (hereinafter the "Opposition").  This he cannot do.  If a plausible case can be made out against the Defendants the Trustee must do so in a well-pleaded complaint, not a memorandum of law. Further, based upon the new allegations and theories enunciated via the Opposition, a re-pleading would be fruitless because, even as reworked, the Trustee's factual allegations are

1

insufficient to make out a plausible cause of action.  The Court should therefore grant the Defendants' motions to dismiss.

Finally, as the Trustee agrees, the Court should dismiss with prejudice Count III in Adv. No. 17-50758 (Preferential Transfer) against G. McClelland. (See Opposition at 2 n.4).

## II.    ARGUMENT

### A. The Trustee cannot allege new facts which should have been pled in his Complaints, if at all, for the first time in his Opposition to a Motion to Dismiss.

In his Opposition, the Trustee asserts a number of new factual allegations that were neither present nor reasonably inferable from his Complaints.  These new allegations, among others, include:  that F-Squared's customer contracts included indemnity clauses; that F-Squared's customers paid penalties to the SEC; and that F-Squared's customers filed indemnity claims against F-Squared in these Bankruptcy Cases.[1]  Put simply, the Trustee's Opposition frames the Complaints he perhaps should have drafted, but did not.

As described in Defendants' initial Motion to Dismiss, see pp. 7-13, the Trustee failed to allege a plausible claim that the debtor was insolvent at the time the debtor made the questioned payments to the Defendants. In determining whether the Trustee alleged sufficient facts to survive Defendants' Motions to Dismiss, "the court is limited to the four corners of the complaint."  Schuchardt v. President of the United States, 839 F.3d 336, 353 (3d Cir. 2016); see also Santomenno ex rel. John Hancock Tr. v. John Hancock Life Ins. Co. (U.S.A), 768 F.3d 284,

---

[1]    Although beyond the scope of a motion to dismiss, Defendants note that the Trustee's additional allegations fail to fully acknowledge that nearly every unrelated third party claim arises from two actions filed in Federal District Court: 1) In re Virtus Partners Inc. Securities Litigation, 15-cv-1249 (WHP) (S.D.N.Y 2015); and Youngers v. Virtus Investment Partners, Inc., 15-cv-8262 (WHP) (S.D.N.Y 2015).  The claims in Youngers have been voluntarily dismissed.  See Dismissal Stipulation, Youngers v. Virtus Investment Partners, Inc, 15-CV-8262 (S.D.N.Y 2017) ECF No. 192.  The case is now closed.  The remaining action, Virtus Securities is brought by individuals who held Virtus stock, not shares in the funds following F-Squared's Alpha Sector signals.  It is unclear if those plaintiffs will be successful and if so, it is at best unclear how F-Squared would be held derivatively liable for those claims.  A review of the other claims reveals most are claims for indemnification brought by F-Squared's former officers and directors.

2

290 (3d Cir. 2014) ("In reviewing a motion to dismiss under Rule 12(b)(6), we treat as true all well-pleaded facts in the complaint, which we construe in the light most favorable to the plaintiff.  To survive a motion to dismiss, a claimant must state a plausible claim for relief, and a claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.") (internal citations and quotations omitted).

The Trustee, in tacit admission of his failure to plead a viable case, spends little time referencing his Complaints in the Opposition and explaining how he met even the minimal standards required to sustain his case at this stage.[2]  Instead, he focuses his Opposition recounting facts that cannot be discerned as present in his original pleading even given the most indulgent reading possible.  These new facts do not count in the Court's analysis of whether the Trustee met his initial burden in pleading a case.  See In re Asbestos Prod. Liab. Litig. (No. VI), 822 F.3d 125, 133 (3d Cir. 2016) (finding that trial court's consideration of evidence alleged in a motion to dismiss "was error because 'a court considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) may consider *only* the allegations contained in the pleading to determine its sufficiency'") (quoting Santomenno, 768 F.3d at 290) (emphasis in original). Indeed, the Trustee's effort to re-plead his case in his Opposition is at best a tacit admission he failed to do so in his Complaints. Given the stakes in these cases—a request to recover over $6 million from a group of individuals—it is fundamentally unfair for the Trustee to disregard his

---

[2]      Even when he does mention his Complaints, the Trustee obfuscates the allegations made there by liberally blending in facts not found in the pleading while purporting to reference paragraphs from the Complaints.  For example, at page 16 of the Opposition (second-to-last bullet point before paragraph 42), the Trustee cites to ¶20 of the Complaints for the purported fact that the Debtor's schedules and statement of affairs described the Debtor's indemnification agreements and a $1.5 billion lawsuit on account of those alleged indemnification agreements. Nowhere in ¶ 20 of the Complaints is that fact stated or inferable.

burden of pleading and force the Defendants to guess what his theories are and why they could be liable.  For these reasons, the Court should dismiss the Trustee's Complaints.

**B. The Trustee's valuation of the alleged liabilities arising out of F-Squared's indemnity contracts should be reduced by both the courts' dismissals of several claims, as well as by the fact that such claims were highly unlikely.**

Based on the Opposition, it appears the Trustee is retreating from some theories alleged in his Complaints and instead is focusing almost exclusively on theory that the debtor was balance sheet insolvent from the inception.  Though there is no mention of them in his Complaints, the Trustee now attempts to articulate a plausible case based on the indemnification clauses he says were contained in F-Squared's contracts with its customers.  Pointing to proofs of claim filed by F-Squared customers, which themselves point to legal actions brought by their customers and investors in February and May of 2015, many months after most of the challenged distributions, the Trustee claims F-Squared was always insolvent.  What the Trustee does not plead or even attempt to allege is why any reasonable F-Squared officer would have thought those indemnification clauses would translate into bona fide claims, and if so for how much.  The Trustee also makes a point not to say when any such manager would have made such a conclusion.  Such averments are critical to the articulation of a plausible claim in this case.

The allegations in the Opposition do not suffice.  According to the Trustee, based on "public information available to [it]" certain customers of F-Squared paid penalties to the SEC, "relating to their relationship with F-Squared and resulting from F-Squared's fraud."  Opposition at ¶ 22.  The Trustee then lists a number of former customers and the amounts of their alleged payments to the SEC.  Id.  The Trustee continues on, alleging that these customers "were also forced to incur legal and other expenses related to the investigations, and otherwise incur costs and other liabilities indemnifiable under their contracts with F-Squared."  Id. at ¶ 23.  According

to the Trustee, not only is F-Squared liable for these penalties, costs and expenses, but also the penalties, costs and expenses incurred by the customers of F-Squared's customers. Id. As a result, "[u]nder its indemnification agreements . . . F-Squared's misconduct subjected it to massive unliquidated liabilities to its clients." Id.

As an initial matter, none of F-Squared's alleged liability arising out of its customers' indemnity claims should be considered by the Court because they were not pled in the Complaints. As discussed above, the Court is limited in evaluating a plaintiff's claims to "the four corners of the complaint." Schuchardt, 839 F.3d at 353. Since the Complaints make no mention of these indemnity contracts, much less of any claims arising out of those contracts, any such allegations raised for the first time in the Trustee's Opposition should be set aside.

Beyond this threshold issue, the Trustee fails to properly characterize these alleged liabilities. All were, at best, contingent claims at the time the transfers were made. Further, of those that the Trustee alleges became liquidated, they alone would not have rendered the company insolvent. While claiming the misrepresentation about the track record of Alpha Sector would lead to "massive liabilities" and rendered F-Squared "insolvent from the inception" even now, years later, the purported massive liabilities have failed to materialize. The claims that are liquidated arose from the SEC investigation of customers.[3] Those investigations were hardly foreseeable in 2013 and 2014 when the transfers were made. By the Trustee's own account they amounted to a total liability of $18.2 million plus legal fees, hardly sufficient to render F-Squared insolvent at the time. Further, it is less than clear that F-Squared would even be liable

---

[3]    The largest of the claims is attributable to Virtus Investment Advisors, Inc.—$16.5 million. In litigation pending against Virtus, the plaintiffs allege that Virtus was aware of the lack of a live track record at least as early as 2012. See Amended Complaint at ¶80, In re Virtus Partners, Inc., Securities Litigation, 15-cv-1249 (S.D.N.Y. 2015) ECF No. 33. If this allegation is true, it is difficult to imagine why F-Squared would be responsible for Virtus' claim, when Virtus had knowledge of the alleged misrepresentation for at least two years prior and continued to sell Alpha Sector.

for the majority of those hypothesized claims.  The other claims the Trustee touts have yet to be liquidated.  Notably, the source of the greatest potential claims by the Trustee account has been withdrawn.  (See Opposition at 10 n.6).  On December 27, 2017 the United Federal District Court approved the voluntary dismissal of Youngers v. Virtus Investment Partners, Inc. See Dismissal Stipulation, Youngers v. Virtus Investment Partners, Inc, 15-CV-8262 (S.D.N.Y 2017) ECF No. 192.  It is still unclear three years after the SEC order if the remaining contingent claims will become actual, liquidated claims.  Put simply, these claims are highly contingent, amounting to little more than the customers' own unproven and unsubstantiated guesses as to the losses they suffered.  If the Court decides to look beyond the four corners of the Complaints and consider the Trustee's Opposition allegations, it should also look at the indemnity claims in their complete context.

Additionally, if the Court decides to consider these contingent claims, it should properly value them, based on the present value of the claims *at the time* the payments to the Defendants occurred.  See Matter of Xonics Photochemical, Inc., 841 F.2d 198, 200 (7th Cir. 1988) (Posner, J.) ("It makes no difference whether the firm has a contingent asset or a contingent liability; the asset or liability must be reduced to its present, or expected, value before a determination can be made whether the firm's assets exceed its liabilities."); In re Oakes, 7 F.3d 234 (6th Cir. 1993) ("Although contingent liabilities are included in determining whether a debtor is insolvent for preference purposes, they cannot be included at face value."); F.D.I.C. v. Bell, 106 F.3d 258, 264 (8th Cir. 1997) ("Where a liability is contingent on an impossible or an extremely unlikely event, its value will be nothing or close to nothing, and will have negligible or no effect on the net value of an asset.") (Applying Arkansas Fraudulent Transfer Act).  Since, "[b]y definition, a contingent liability is not certain-and often is highly unlikely-ever to become an actual liability . . . it is

necessary to discount it by the probability that the contingency will occur and the liability become real." Xonics, 841 F.2d at 200; cf. In re R.M.L., Inc., 92 F.3d 139, 156 (3d Cir. 1996) (citing Xonics in a fraudulent transfer case for the proposition that "if a debtor's treatment of an item as an 'asset' depends for its propriety on the occurrence of a contingent event, a court must take into consideration the likelihood of that event occurring from an objective standpoint.").

In this case, the Trustee has not engaged in any analysis of the likely value of F-Squared's alleged indemnity liabilities at the time the company made the payments to the Defendants.  Rather than making a meaningful assessment before filing his Complaints, the Trustee simply parrots the values of the claims alleged by the customers in their lawsuits, arguing that F-Squared was insolvent at the time it made its payments to the Defendants because of those "massive" contingent claims against the company.  As Judge Posner pointedly explained, however, such a "proposition is absurd," and "would mean that every individual or firm that had contingent liabilities greater than his or its net assets was insolvent-something no one believes." Xonics, 841 F.2d at 199.  The actual amounts of those liabilities demonstrates that many, perhaps most, were unforeseeable and even if they could be foreseen, less than certain to produce any material liability.  From an objective standpoint, at the time F-Squared made its payments to Defendants, few could have predicted that the SEC would continue its enforcement actions against F-Squared's customers[4], or that F-Squared's clients would, in turn, assert indemnification claims against the company.  Fewer still could have predicted the value of those liabilities, especially considering the fact that at this point, those liabilities are still contingent and their actual value unknown.  See Cont'l Bank, N.A. v. Burke, 5 F.3d 545 (10th Cir. 1993)

---

[4]    Notably, those SEC actions are what likely led to the customers decisions to terminate business with F-Squared which dramatically reduced its revenue which in turn lead to its chapter 11 filing.  Those enforcement actions occurred in 2015.  The Trustee focus now on indemnification claims appears to be grounded in his attempt to bring claims back in time (and thereby insolvency) to the period when the payments were made, a tacit admission he cannot rely on the loss of business to make out his case.

(finding that the amount of a guaranty claim should be reduced by the probability that the claim would occur because a guaranty, like an indemnity, is a contingent liability which "is not determined solely by its face value, but instead is a function of the debtor's assets, the likelihood that the guaranty will be called, and the guarantor's ability to pay it if it is called").  As a result, should the Court decide to consider these indemnity claims for purposes of determining F-Squared's solvency at the time it made the payments, the Court should discount the values of those claims by the unlikelihood, at the time the payments were made, that those claims would have come into existence.

## III.    CONCLUSION

For the above-referenced reasons, the Court should dismiss Counts I-III of each Complaint and dismiss the Complaints with prejudice.

Dated:  January 19, 2018
      Wilmington, Delaware

**POTTER ANDERSON & CORROON LLP**

*/s/ D. Ryan Slaugh*
Jeremy W. Ryan (DE Bar No. 4057)
D. Ryan Slaugh (DE Bar No. 6325)
1313 North Market Street, Sixth Floor
P.O. Box 951
Wilmington, DE  19801
Telephone:  (302) 984-6000
Facsimile:  (302) 658-1192
Email:  jryan@potteranderson.com
       rslaugh@potterandercon.com

-and-

**MCLANE MIDDLETON, PROFESSIONAL ASSOCIATION**
Joseph A. Foster, Esq.
900 Elm Street
P.O. Box 326
Manchester, NH  03105-0326
Telephone:  (603) 628-1175
Facsimile:  (603) 625-5650
Email:  joseph.foster@mclane.com

*Counsel to the Defendants*

8