**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| F-SQUARED INVESTMENT MANAGEMENT, LLC, *et al.*,[1] | Case No. 15-11469 (LSS) |
| Debtors. | (Jointly Administered) |
| CRAIG JALBERT, IN HIS CAPACITY AS TRUSTEE FOR F2 LIQUIDATING TRUST, | |
| Plaintiff, | |
| vs. | Adv. No. 17-50758 (LSS) |
| George McClelland, | |
| Defendant. | |

## MOTION FOR LEAVE TO FILE AMENDED COMPLAINT

Plaintiff Craig Jalbert (the "Trustee"), as trustee of the F2 Liquidating Trust (the "Trust"), by and through his undersigned counsel, hereby moves the Court for leave to amend (the "Motion to Amend") the complaint (the "Complaint") in the above-captioned adversary proceeding (the "Adversary Proceeding"), pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure, made applicable to this proceeding by Rule 7015 of the Federal Rules of Bankruptcy Procedure. The proposed Amended Complaint is attached hereto as **Exhibit 1**. A redline between the operative complaint and the proposed Amended Complaint is attached hereto as **Exhibit 2**. A proposed order granting this motion is attached hereto as **Exhibit 3**.

---

1    The Debtor in these cases, along with the last four digits of its federal tax identification number, is: F-Squared Investment Management, LLC (9247). The Debtor's address is Verdolino & Lowey, P.C., 124 Washington Street, Suite 101, Foxboro, Massachusetts 02035, Attn: Craig R. Jalbert.

{00026595. }

## BACKGROUND

1.      On July 7, 2017, the Trustee filed multiple adversary proceedings on behalf of the Trust seeking, *inter alia*, to recover discretionary bonuses paid to the Debtors' employees and tax and profit distributions paid to the Debtors' shareholders, including the Complaint against George McClelland (the "Defendant").

2.      On November 7, 2017, the Defendant filed a motion to dismiss the Complaint [Adv. D.I. 13] (the "Motion to Dismiss") and a memorandum in support of the Motion to Dismiss [Adv. D.I. 14] (the "Memorandum").

3.      In the Memorandum, the Defendant argued, in part, that the Trustee's fraudulent transfer claim should be dismissed because the Trustee did not adequately plead that F-Squared was insolvent at the times of the Transfers.

4.      In response, the Trustee filed its Opposition to the Motion to Dismiss [Adv. D.I. 30] (the "Opposition"), Defendant filed a reply [Adv. D.I. 35], and the Trustee filed a sur-reply [Adv. D.I. 41].

5.      The Trustee entered into an agreed scheduling order (the "Scheduling Order") with the Defendant that fixed certain dates for the completion of written fact discovery, mediation, depositions, expert discovery, and dispositive motions.  Pursuant to the Scheduling Order, initial written fact discovery was completed on June 30, 2018.

6.      On July 12, 2018, the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") entered the *Order Granting in Part and Denying in Part Motion to Stay Discovery* [Adv. D.I. 56] (the "Stay Order").  Pursuant to the Stay Order, all deadlines related to (i) additional written discovery; (ii) depositions; (iii) mediations; (iv) expert discovery; and (v) summary judgment motions were stayed pending further order(s) of the Bankruptcy Court.

7.     On March 12, 2019, the Bankruptcy Court heard oral argument on the Motion to Dismiss.

8.     On September 6, 2019, the Bankruptcy Court entered an Opinion granting the Motion to Dismiss as to fraudulent transfer counts asserted by the Trustee for failure to adequately plead insolvency [Adv. D.I. 71] (the "Opinion").[2]

9.     By this motion, the Trustee now moves for leave to amend the pertinent allegations of the Complaint as to F-Squared's insolvency at the times of the Transfers.   The proposed Amended Complaint is attached hereto as **Exhibit 1**.   A redline between the operative complaint and the proposed Amended Complaint is attached hereto as **Exhibit 2**.

### ARGUMENT

10.     Federal Rule of Civil Procedure 15(a)(2), made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7015, provides that leave to amend should be freely granted "when justice so requires," and the Third Circuit has explained that, "[g]enerally, Rule 15 motions should be granted."  See United States *ex rel.* Customs Fraud Investigations, LLC v. Victaulic Co., 839 F.3d 242, 249 (3d Cir. 2016).  Moreover, if, as here, "a complaint is subject to a Rule 12(b)(6) dismissal," the Third Circuit has mandated that "a district court *must* permit a curative amendment unless such an amendment would be inequitable or futile."  Phillips v. Cty. of Allegheny, 515 F.3d 224, 245 (3d Cir. 2008) (emphasis added); see Foman v. Davis, 371 U.S. 178, 182 (1962) (leave should be "freely given" in the absence of (a) undue delay; (b) bad faith or dilatory motive; (c) repeated failure to cure deficiencies; (d) undue prejudice to the opposing party; or (e) futility of the amendment); Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d

---

[2]     The Bankruptcy Court also issued an Opinion on May 7, 2019 concerning the motion to dismiss argument raised by certain defendants that the Trustee failed to sufficiently plead lack of reasonably equivalent value in exchange for certain discretionary bonus payments, and the Bankruptcy Court has also issued other Opinions addressing motion to dismiss arguments applicable only to certain defendants.  The Bankruptcy Court noted in both Opinions that it was not making findings of fact or conclusions of law pursuant to Fed. R. Civ. P. 52(a)(3), made applicable by Fed. R. Bankr. P. 7052.

Cir. 2002) (noting that "[t]he first four of these reasons devolve to instances where permitting amendment would be inequitable").

11.     Because the amendment is not futile, there is no undue delay or prejudice, and the Trustee has not and is not acting in bad faith and thus no ground for denying a motion to amend is present, the Court should grant this Motion and permit the Trustee to amend his pleadings.

> **I.     The Amended Complaint Addresses the Pleading Deficiencies Identified in the Bankruptcy Court's Opinion and Is Not Futile.**
>
> **A.     The Futility Standard is Met.**

12.     "An amendment is futile if the complaint, as amended, would fail to state a claim upon which relief could be granted." Charys Liquidating Tr. v. Hades Advisors, LLC (In re Charys Holding Co.), 443 B.R. 638, 642 (Bankr. D. Del. 2011) (Shannon, J.) (internal quotation marks omitted).  To state a claim under Rule 8(a)(2) of the Federal Rules of Civil Procedure, applicable here pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure, a "short and plain statement of the claim[s] showing that the pleader is entitled to relief" is required. Rule 8(a)(2) "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]." Stanziale v. Versa Capital Mgmt., LLC (In re Simplexity, LLC), No. 14-10569(KG), Adv. Pro. No. 16-50212(KG), 2017 WL 65069, at *3 (Bankr. D. Del. Jan. 5, 2017) (Gross, J.) ("And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.") (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-56 (2007)).  For the reasons set forth herein, the Trustee's proposed Amended Complaint meets this standard and is thus not futile.

B.    **Facts Asserted In The Trustee's Opposition Briefing
As Susceptible Of Judicial Notice And/Or Inference
Now Expressly Alleged in the Proposed Amended Complaint.**

13.    First, in the September 6, 2019 Opinion, over the Trustee's arguments that certain facts were susceptible of judicial notice and/or could be inferred on the motions to dismiss, the Bankruptcy Court identified a number of allegations that the Bankruptcy Court determined were alleged "for the first time" in the Trustee's motion to dismiss opposition briefing and, as such, would not be considered by the Bankruptcy Court.  Opinion at 17.  Each of these items identified by the Bankruptcy Court are now the subject of express and detailed allegations in the proposed Amended Complaint:

- "(i) aggregate and yearly fees received for the use and licensing of the AlphaSector Indexes" (Opinion at 17) are now alleged in the proposed Amended Complaint; F-Squared generated a total of over $250 million of revenue through the third quarter of 2014, and the yearly breakdowns are alleged to have been approximately $11 million for the six months ending December 31, 2011; $38 million in 2012; $82 million in 2013; $130 million in 2014 (see proposed Amended Complaint ¶ 21);

- "(ii) statutory penalties that the SEC may assess for each violation of the securities laws" (Opinion at 17) are now alleged throughout the proposed Amended Complaint and in detail at proposed Amended Complaint paragraphs 50-52 (detailing how F-Squared was subject to penalties of up to $500,000 per violation of each of the Investment Advisers Act of 1940 and the Investment Company Act of 1940) and paragraph 66 (detailing how F-Squared was subject to forfeiture of all revenues derived from its willful misconduct constituting a violation of the securities laws);

- "(iii) allegations regarding F-Squared's contracts with clients which allegedly include indemnification clauses" (Opinion at 17) are now alleged in detail at proposed Amended Complaint background section C.1.b.ii (setting forth the specific indemnification clause in F-Squared's contracts with its Financial Clients (as defined in the proposed Amended Complaint), how its Financial Clients relied on and used F-Squared's advertisements and securities filings in their own advertisements and securities filings, how the SEC investigated F-Squared's Financial Clients, and the specific financial payments Financial Clients were obligated to pay as a result of these SEC investigations, among other things);

- "(iv) a discussion of the proofs of claims filed against F-Squared together with a thirteen-page chart listing 94 proofs of claim" (Opinion at 17) is now set forth at background section C.1.b.iii of the proposed Amended Complaint and the proofs of claim chart is Exhibit D to the proposed Amended Complaint.

14.     Each of these facts—each as more fully detailed in the allegations of the proposed Amended Complaint itself—is now set forth expressly in the proposed Amended Complaint.

**C.     Comparative and Specific Assets and Liabilities and Financial Condition Facts Reflecting F-Squared's Insolvency at the Time of the Transfers Are Now Alleged in the Proposed Amended Complaint.**

15.     The Bankruptcy Court remarked in the September 6, 2019 Opinion that while it "may be true," as the Trustee argued in his opposition briefing, "that insolvency can be pled without providing balance sheet specifics," it nevertheless is necessary that "the complaint states facts that allow the court to draw a reasonable inference of insolvency" to state a claim, and the Bankruptcy Court determined that was not the case with respect to the allegations of the Complaints as originally filed.   Opinion at 24.   The Bankruptcy Court observed that the Complaints "do not contain any specific allegations regarding Debtors' assets or liabilities at the time of each transfer."   Id. at 23; see also id. at 26-27 ("these allegations do not permit me to draw a reasonable inference that Debtors were insolvent at the time of each transfer"; "[s]imply facing liability for securities fraud does not make a company insolvent"; and "uses of words such as 'massive' and 'enormous' to describe a company's liabilities are conclusory in nature and say nothing regarding the actual magnitude of the liabilities much less the magnitude relative to the company's assets"); id. at 33 ("But from this, I cannot draw the further requested inference that F-Squared was insolvent on each of those dates, primarily because the Trustee did not plead any facts regarding F-Squared's assets on those dates. . . . Even though there is an established liability, I have no asset information to compare it to.").

16.     The proposed Amended Complaint at background section C.1 now alleges the specific, comparative assets and liabilities information, as follows:

- **F-Squared's Balance Sheet**.   Paragraphs 36-38 set forth F-Squared's audited balance sheet information including total assets, total liabilities, and equity book value dollar figures for year-end in each of 2011, 2012, 2013, and 2014, and allege that those figures do not accurately reflect F-Squared's financial condition.

- **F-Squared's Assets**.   Background section C.1.a details each of the items that made up F-Squared's assets (i.e., cash and cash equivalents; accounts receivable; deferred income taxes; property, equipment, and improvements; investments in securities; and intangible assets), and alleges how each was incorrectly overvalued on F-Squared's balance sheet.   This section also sets forth a chart that reflects the asset-side of F-Squared's balance sheet and the values for each of F-Squared's assets as of year-end in each of 2011, 2012, 2013, and 2014, and alleges the appropriate, adjusted values for each of those assets in each of those years.

- **F-Squared's Liabilities**.   Background section C.1.b details each of the items on F-Squared's historical balance sheets (i.e., accrued expenses, compensation, and professional fees; securities sold short, at fair value; loans payable; member unit deposits; and deferred rent), and alleges that the historical balance sheets do not account for several categories of liabilities that are then detailed (i.e., liabilities to the SEC; indemnification liabilities to Financial Clients; liabilities for breach of contract and misconduct; criminal liabilities; and state law liabilities).

- **Liabilities to the SEC**.   Background section C.1.b.i details F-Squared's liabilities to the SEC for its now-admitted violations of the securities laws and specifically its violations of the Investment Advisers Act of 1940 and the Investment Company Act of 1940; the penalties of the greater of $500,000 per violation of each statute, or the gross amount of pecuniary gain resulting from such violations and the specific statutory bases for this exposure; and allegations that F-Squared's balance sheet should have reflected these exposures at the times of all of the Transfers.

- **Indemnification Liabilities**.   Background section C.1.b.ii details the specific indemnification provision in F-Squared's contracts with its Financial Clients; detail F-Squared's contractual obligations to provide information required by the Investment Advisers Act and to immediately notify Financial Clients of any and all material facts not contained in F-Squared's Form ADV; F-Squared's admission that it willfully misled its Financial Clients and willfully failed to include all relevant information on its Form ADV; F-Squared's understanding that many if not all of its Financial Clients relied on and used F-Squared's advertisements and

securities filings in their own advertisements and securities filings; and details the precise payment figures each of sixteen (16) Financial Clients paid as a result of SEC investigations due to F-Squared's breach of its contractual obligations, among other things.

- **Liabilities for Breach of Contract and Misconduct**.  Background section C.1.b.iii details how F-Squared was in breach of each and every one of its model manager and sub-advisory agreements by which it conducted its business at all times from 2008 through September 2013, how F-Squared induced counterparties to enter those agreements promoting a track record that was inaccurate both because it was not actually used on live assets and also because a back-testing error resulted in inflated advertised results; and that F-Squared received over $100 million in fees under such agreements, all of which have been determined to have been causally connected to F-Squared's fraud.

- **Criminal Liabilities**.  Background section C.1.b.iv alleges how willful violations of the securities laws may be prosecuted criminally; that F-Squared admitted to willful violations and waived any claim of double jeopardy based on its settlement with the SEC and thus continued to have such criminal exposure; and that all revenues derived from the willful misconduct constituting a securities violation are subject to forfeiture, which date back to revenues earned since F-Squared began its fraudulent marketing in 2008.

- **State Law Liabilities**.  Background section C.1.b.v details F-Squared's exposure to at least double and up to treble actual damages suffered by F-Squared's Financial Clients due to F-Squared's fraud under Section 2 of Chapter 93(A)(2) of the Massachusetts General Laws; that F-Squared's Financial Clients suffered actual damages of at least $67.3 million; and that F-Squared's balance sheets should have, but did not, reflect the state-law liabilities it had at the times of the Transfers.

- **Adjusted Balance Sheet Reflects F-Squared's Insolvency**.  Paragraphs 71-73 allege that in light of all of these liabilities not reflected on F-Squared's balance sheets F-Squared's liabilities were always far greater than it represented and that F-Squared's liability to the SEC alone would have rendered it insolvent at the times of each of the Transfers.  Paragraph 71 sets forth a chart reflecting specific, conservatively estimated liability figures for year-end for each of 2011, 2012, 2013, and 2014 reflecting F-Squared's insolvency at all relevant times.

17.    In light of these specific, detailed allegations that set forth comparative assets and liabilities and other information reflecting F-Squared's financial condition at the time of each of the Transfers, the proposed Amended Complaint now sufficiently pleads insolvency and states a

claim such that the amendment is not futile.

## II.     The Amended Complaint Results in No Undue Delay or Undue Prejudice.

18.     The Bankruptcy Court issued its Opinion granting the Motion to Dismiss on September 6, 2019, explaining that the Bankruptcy Court will "permit the Trustee to file motions to amend the Complaints with respect to his allegations related to F-Squared's financial condition if he believes it is appropriate."  Opinion at 42.  The Court subsequently scheduled a status conference for October 18, 2019.  [Adv. D.I. 72]  The Trustee promptly filed this Motion to Amend without undue delay.

19.     In the Third Circuit, "[t]he passage of time, without more, does not require that a motion to amend a complaint be denied."  Charys Liquidating Tr., 443 B.R. at 644 (quoting Adams v. Gould Inc., 739 F.2d 858, 868 (3d Cir. 1984)); Vision Metals, Inc. v. SMS Demag, Inc. (In re Vision Metals, Inc.), 311 B.R. 692, 701 (Bankr. D. Del. 2004) ("Delay, by itself, is not a sufficient reason for a court to deny a motion to amend a complaint.").

20.     Moreover, delay is not undue where a plaintiff waits for a ruling on a motion to dismiss before amending its complaint.  See United States *ex rel.* Customs Fraud Investigations, LLC, 839 F.3d at 250 (finding that there was no undue delay where plaintiff filed motion for leave to amend complaint after motion to dismiss was granted because "a plaintiff is unlikely to know whether his complaint is actually deficient—and in need of revision—until after the District Court has ruled.").

21.     The stage of the proceedings is relevant to the consideration of whether leave to amend would result in undue delay or undue burden on the non-moving party.  See Cureton v. Nat'l Collegiate Athletic Ass'n, 252 F.3d 267, 273-74 (3d Cir. 2001) (observing with respect to undue delay that "[w]hen a party delays making a motion to amend until after summary

judgment has been granted to the adverse party, other courts have recognized that the interests in judicial economy and finality of litigation may become particularly compelling" and with respect to undue burden that "we have considered whether allowing an amendment would result in additional discovery, cost, and preparation to defend against new facts or new theories" and affirming the District Court's denial of leave to amend where a new claim was sought to be added that "might require the court to revisit the certification of the class and that amendment would lead to further discovery requests and significant new preparation").  Granting this Motion results in neither undue delay nor undue burden because the parties have yet to complete discovery and no party will "be deprived of the chance to present facts or evidence." Bechtel v. Robinson, 886 F.2d 644, 652 (3d Cir. 1989) (reversing District Court's denial of leave to amend and finding no undue delay where parties were still engaged in initial discovery at the time of the amendment such that the non-moving party would not "be deprived of the chance to present facts or evidence"); see Invensas Corp. v. Renesas Elec. Corp., No. 11-448-GMS-CJB, 2013 WL 1776112, at *3 (D. Del. April 24, 2013) (finding no undue delay where discovery was ongoing, no depositions had taken place, and no trial date was scheduled); Cloud Farm Assocs., L.P. v. Volkswagen Grp. of Am., Inc., No. CA 10-502-LPS, 2012 WL 3069390, at *2, 6 (D. Del. July 27, 2012) (finding no undue delay and no unfair prejudice where no trial date had been set, dispositive motions had not been filed, and expert reports had not been exchanged).

22.      Furthermore, "[p]rejudice does not mean inconvenience to a party . . . . [P]rejudice means that the 'nonmoving party must show that it was unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered had the . . . amendments been timely.'" Cuffy v. Getty Refining and Mktg. Co., 648 F. Supp. 802, 806 (D.

Del. 1986) (quoting <u>Heyl & Patterson Int'l, Inc. v. F.D. Rich Housing of Virgin Islands, Inc.</u>, 663 F.2d 419, 426 (3d Cir. 1981)).

23.     Under this standard, leave to amend should be granted here.  While the parties have exchanged written discovery (including all information about the financial condition of F-Squared at the times of the Transfers contained in the proposed Amended Complaint), the remainder of the case deadlines established in the Scheduling Order have been stayed: the parties have not conducted depositions, exchanged expert reports, or filed dispositive motions.[3] Therefore, the Amended Complaint will not deprive the Defendant of any opportunity to present whatever facts or evidence the Defendant would like to present.

24.     Additionally, the proposed Amended Complaint does not seek to alter the substance of the Trustee's claims in any way.  The Trustee does not propose to add any new causes of action.   Rather, the Trustee's amended pleading provides more details as to F-Squared's financial condition, but the fundamental allegation emanating from the Amended Complaint's financial condition allegations—namely, that F-Squared was insolvent at the time of the Transfers—is the same fundamental factual allegation already present in the current operative Complaint.

### III.     <u>The Trustee Is Not Acting and Has Not Acted In Bad Faith.</u>

25.     The Trustee does not file this Motion in bad faith and there is no basis to assert the contrary.  The Bankruptcy Court having found that the Complaint's allegations concerning F-Squared's financial condition at the time of the Transfers were insufficient, the Trustee seeks in

---

[3] Defendant filed a motion for summary judgment to which, pursuant to the Stay Order, the Trustee has not yet responded.  While the Trustee does not believe that the proposed amendments will have any impact on the motion for summary judgment, the Trustee would not oppose such defendants amending their motion for summary judgment.  Moreover, the Trustee has already produced relevant non-privileged documents related to the Debtors' financial condition, including documents supporting the allegations in the Amended Complaint.  Nonetheless, the Trustee is willing to accommodate Defendant's need, if any, for extended discovery deadlines due to the Amended Complaint in any further scheduling order.

good faith to amend his pleading to allege additional, more detailed facts concerning F-Squared's insolvency at the relevant times.

26.     Nor has there been a repeated failure to cure deficiencies.   Under these circumstances, applying the standard that prevails in the Third Circuit for amendment under Rule 15(a)(2), leave to amend should be granted.

## **CONCLUSION**

27.     For the foregoing reasons, Plaintiff respectfully requests that the Motion be granted in its entirety, Plaintiff be allowed to file the proposed Amended Complaint, and the Amended Complaint be deemed to have been filed, for statute of limitations purposes, as of the date of the Complaint.

Dated: October 17, 2019
      Wilmington, Delaware

**THE ROSNER LAW GROUP LLC**

*/s/ Jason A. Gibson*
Frederick B. Rosner (DE 3995)
Jason A. Gibson (DE 6091)
824 Market Street, Suite 810
Wilmington, DE 19801
Telephone: (302) 777-1111
Email: gibson@teamrosner.com

-and-

**BROWN RUDNICK LLP**
William R. Baldiga, Esq.
Sunni P. Beville, Esq.
Sharon I. Dwoskin, Esq.
One Financial Center
Boston, MA 02111
Telephone: (617) 856-8200
wbaldiga@brownrudnick.com
sbeville@brownrudnick.com
sdwoskin@brownrudnick.com

-and-

D. Cameron Moxley, Esq.
Seven Times Square
New York, NY 10036
Telephone: (212) 209-4800
cmoxley@brownrudnick.com

*Counsel for the F2 Liquidating Trust*