# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| F-SQUARED INVESTMENT MANAGEMENT, LLC, *et al.*,[1] | Case No. 15-11469 (LSS) |
| Debtors. | (Jointly Administered) |
| CRAIG JALBERT, IN HIS CAPACITY AS TRUSTEE FOR F2 LIQUIDATING TRUST, | |
| Plaintiff, | Adv. No. *See* Exhibit A |
| vs. | |
| Defendants Listed on Exhibit A, | |
| Defendants.[2] | |

**OMNIBUS REPLY MEMORANDUM OF LAW IN FURTHER
SUPPORT OF MOTION FOR LEAVE TO FILE AMENDED COMPLAINT**

Plaintiff Craig Jalbert (the "Trustee"), as trustee of the F2 Liquidating Trust (the "Trust"), by and through his undersigned counsel, hereby submits this reply memorandum of law in further support of his motion for leave to amend (the "Motion") the complaint (the "Complaint") and to file the Proposed Amended Complaint attached as Exhibit 1 to the Motion (the "PAC") in the above-captioned adversary proceedings (the "Adversary Proceedings"), pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure, made applicable to this proceeding by Rule 7015 of the Federal Rules of Bankruptcy Procedure.

---

[1] The Debtor in these cases, along with the last four digits of its federal tax identification number, is: F-Squared Investment Management, LLC (9247). The Debtor's address is Verdolino & Lowey, P.C., 124 Washington Street, Suite 101, Foxboro, Massachusetts 02035, Attn: Craig R. Jalbert.

[2] This Omnibus Reply Memorandum of Law in Further Support of Motion for Leave to File Amended Complaint is filed in each the Adversary Proceedings identified on the attached Exhibit A.

{00027410. }

**PRELIMINARY STATEMENT**

1. The PAC alleges in more detail the bases of the claims asserted in the Complaint and, in particular, provides more specificity as to F-Squared's financial condition, but it does not add any new causes of action not previously asserted in the original Complaint.

2. Defendants essentially advance three arguments against the Motion: (1) that the Trustee unduly delayed seeking leave to amend the Complaint; (2) that the PAC unduly prejudices Defendants; and (3) that leave to file the PAC would be futile because (i) the PAC does not relate back to the Complaint, and (ii) the PAC fails to plausibly allege insolvency.[3] Defendants are wrong on all counts.

3. First, there was no undue delay because the Trustee was entitled to defend his Complaint and filed the Motion following this Court's September 6, 2019 Opinion dismissing fraudulent transfer accounts asserted by the Trustee for failure to adequately plead insolvency. Second, Defendants will not be deprived of the opportunity to present facts or evidence which they would have offered had the Motion and the PAC been filed earlier, thus granting the Motion yields no undue prejudice and in fact furthers the strong policy in favor of having claims heard on their merits. Third, the more detailed allegations concerning F-Squared's financial condition

---

[3] The Defendants (i) represented by the Potter Anderson & Corroon LLP and McLane Middleton, Professional Association law firms (the "McClelland Defendants") and (ii) represented by the Morris, Nichols, Arsht & Tunnell LLP and Schiff Hardin LLP law firms (the "Schiff Hardin Defendants") also argue that leave to amend would be futile because the Trustee cannot recover certain tax distributions if the Court grants the McClelland Defendants' motion for partial summary judgment. The McClelland Defendants' motion for partial summary judgment should be denied for the reasons set forth by the Trustee in his opposition thereto and is not a proper basis on which to argue futility of leave to amend for the same reasons. In any event, the McClelland Defendants' support for the argument that their partial summary judgment motion is relevant to the futility analysis (see McClelland Defendants' Opp. Br. at 13-14) involve inapposite circumstances and procedural histories. See Leibstein v. LaFarge N. Am., Inc., 689 F. Supp. 2d 373, 376 (E.D.N.Y. 2010) (motion for leave to amend was made as a cross-motion in response to a motion for summary judgment); Smith v. Chrysler Corp., 938 F. Supp. 1406, 1412 (S.D. Ind. 1996) (the proposed amendment sought to add new claims); Allied Erecting & Dismantling Co. v. U.S. Steel Corp., 786 F. Supp. 1223, 1228 (W.D. Pa. 1992) (finding a proposed amendment futile where the "proposed amendment fails to state a prima facie case under RICO," the court concluded "it would be singularly inappropriate to grant [movant] yet another opportunity to cure," and the case was "finally ready for trial"). The McClelland Defendants also argue that the Motion should be denied on the basis of "judicial economy and equitable factors" (McClelland Defendants Opp. Br. at 20), addressed herein.

and insolvency address the deficiencies in the original Complaint and thus the filing of the PAC is not futile.

4. For the reasons set forth herein and in the Motion, the Trustee's Motion should be granted.

## ARGUMENT

5. Leave to amend is to be "freely give[n]" when "justice so requires." Fed. R. Civ. P. 15(a)(2). Indeed, the Third Circuit has observed that it has "rarely upheld a dismissal with prejudice of a complaint when the plaintiff has been given no opportunity to amend." See United States *ex rel.* Customs Fraud Investigations, LLC v. Victaulic Co., 839 F.3d 242, 250 (3d Cir. 2016) ("Victaulic").[4]

### I. The Trustee Did Not Unduly Delay Moving For Leave To File The PAC

6. In the Court's September 6, 2019 Opinion granting the dismissal of fraudulent conveyance claims, the Court expressly permitted the Trustee to file the Motion, and the Court subsequently scheduled a status conference for October 18, 2019. The Trustee filed the Motion on October 17, 2019. To date, no orders in any of the Adversary Proceedings have been entered pursuant to the Court's September 6, 2019 Opinion.

---

[4] The Schiff Hardin Defendants note that the mandatory language of Phillips v. County of Allegheny, 515 F.3d 224, 245 (3d Cir. 2008), that the Trustee cited to in the Motion (namely, that if "a complaint is subject to a Rule 12(b)(6) dismissal," then "a district court must permit a curative amendment unless such an amendment would be inequitable or futile") is applicable to civil rights cases, but the mandatory language is not applicable to this non-civil rights case, citing Northeast Rev. Servs., LLC v. Maps, 685 Fed. App'x 96, 103 (3d Cir. 2017). The Northeast Rev. Servs., LLC court explained that because "this is not a civil rights case, the District Court was not required to sua sponte offer amendment." 685 Fed. App'x at 103 ("In Phillips, we stated that 'if a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile.' 515 F.3d at 245. However, Phillips was a civil rights case, and we have consistently held that 'in civil rights cases district courts must offer amendment—irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable for futile.'"). For the reasons set forth herein and in the Motion, that the mandatory requirement of Phillips that the Court offer a curative amendment sua sponte is not applicable to this non-civil rights case does not change the fact that the Trustee expressed his desire to file the Motion and that the Court expressly permitted the Trustee to do so.

{00027410. }    3

7. "The passage of time, without more," is not undue delay. Charys Liquidating Tr. v. Hades Advisors, LLC (In re Charys Holding Co.), 443 B.R. 638, 642 (Bankr. D. Del. 2011) (quoting Adams v. Gould Inc., 739 F.2d 858, 868 (3d Cir. 1984)). As the Third Circuit in Victaulic explained, "in the context of a typical Rule 12(b)(6) motion, a plaintiff is unlikely to know whether his complaint is actually deficient—and in need of revision—until after the District Court has ruled." 839 F.3d at 250; see In re Digital Island Sec. Litig., 2002 WL 31667863, at *2 n.4 (D. Del. Nov. 22, 2002) (commenting that plaintiffs may "fully defend[] their original consolidated amended complaint, as well as alternatively ask[] for permission to amend"). Thus, defending a motion to dismiss and subsequently moving for leave to amend does not necessarily constitute undue delay. Victaulic, 839 F.3d at 249 (explaining that plaintiff's counsel admitted at oral argument that plaintiff "was 'waiting to see what the court said' before filing its motion to amend its complaint because [plaintiff] had 'thought the court was going to deny the motion to dismiss'" and reversing the District Court's determination that "this tactic made [plaintiff]'s delay undue"); id. at 251-52 (explaining that while in Jang v. Boston Scientific Scimed, Inc., 729 F.3d 357, 368 (3d Cir. 2013), on which Defendants rely, it "is true that . . . we noted that we have 'declined to reward a wait-and-see approach to pleading,'" in "context, however, that statement was of no practical import, since in *Jang* we reversed the District Court's entry of judgment on the pleadings and remanded for further proceedings, explicitly noting that the plaintiff remained 'free to file a new motion for leave to amend'").

8. The "mere fact that a defendant files a motion to dismiss is not necessarily sufficient to put a plaintiff on notice that the court will find his complaint to be deficient." Id. at 249-50. Nor are courts' critical questions at a hearing sufficient to put a plaintiff on notice that

the court will find a complaint deficient because "judges at all levels make statements and ask questions during hearings that may not be a clear indication of the court's views or how a case will eventually be decided," and to "expect the plaintiff to pick, from dozens of questions and statements over the course of a hearing, those questions that signal what the court will ultimately decide is to expect too much." Id. ("even though at the hearing the District Court called plaintiff's complaint 'bare bones' and implied that the plaintiff might need to plead more facts, those statements were not a ruling, a holding, or an explanation of how the court intended to rule").

9.  In the authority relied upon by Defendants, plaintiffs' motions for leave to amend are denied in far different circumstances than those present here where, for example, the plaintiffs previously had an opportunity to amend, the proposed amendment vastly altered the nature of the claims or was made on the eve of trial or a hearing, the request for leave was made in a procedurally improper manner, or made under a combination of such extreme circumstances. See, e.g., Jallad v. Madera, 784 Fed. App'x 89, 95 (3d Cir. Aug. 8, 2019) (proposed amendment sought to add a new claim two years after the action was initiated and "only four days before the start of trial"); Jang, 729 F.3d at 368 (explaining that plaintiff's "proffer that he 'would be prepared to amend' his complaint . . . cannot be construed as a motion for leave to amend," "because we are reversing the judgment on the pleadings, [plaintiff] remains free to file a new motion for leave to amend," and "[w]e express no opinion as to the potential merit of that motion"); ACA Fin. Guaranty Corp. v. Advest, Inc., 512 F.3d 46, 57 (1st Cir. 2008) (action was six years old at the time of dismissal and plaintiffs had previously amended once); Krantz v. Prudential Investments Fund Mgmt. LLC, 305 F.3d 140, 144 (3d Cir. 2002) (plaintiff had amended previously); Lorenz v. CSX Corp., 1 F.3d 1406, 1414 (3d Cir. 1993) (amendment was

requested "nearly two years after the complaint was amended for the second time"); In re Our Alchemy, LLC, 2019 WL 4447545, at *14 (Bankr. D. Del. Sept. 16, 2019) (plaintiff sought leave "in a footnote" which "was not the proper method to seek leave to amend")[5]; In re United Tax Group, 2018 WL 1135496, at *2, 4-5 (Bankr. D. Del. Feb. 28, 2018) (concluding that the "Motion to Amend comes too late based on the circumstances of this case" where the Trustee's amendment sought to add "two new counts" of actual fraud, the "main argument in support of undue delay" was that the proposed amended complaint "does not rely on any new facts and thus should have asserted the proposed actual fraud counts in the Complaint," leave to amend was filed "multiple months after the close of extended fact discovery, on the last day to file dispositive motions, and in response to Defendants' motions for summary judgment filed almost two months prior").

10. No such circumstances are present here: the PAC asserts no new causes of action and only details more thoroughly the existing causes of action, and the Motion seeking leave to file the PAC is the Trustee's first attempt to amend the Complaint and was made after this Court's September 6, 2019 Opinion.

## II. The PAC Does Not Unduly Prejudice Defendants

11. The PAC does not assert any new causes of action or deprive Defendants of the chance to present facts or evidence. As such, Defendants would not be unduly prejudiced by permitting the Trustee leave to file the PAC. Bechtel v. Robinson, 886 F.2d 644, 652 (3d Cir. 1989) (reversing District Court's denial of leave to amend and finding no undue delay where

---

[5] The Schiff Hardin Defendants cite In re Our Alchemy, LLC for the proposition "denying leave to amend where the plaintiff could have amended his complaint within 21 days of receiving the defendants' motion to dismiss but did not" (Schiff Hardin Defendants' Opp. Br. at 5), however, that was not the basis for the denial of leave to amend, as the court expressly stated: "The Court will deny the Trustee's request for leave to amend based on procedural infirmities. The Court *is not making a finding of undue delay, bad faith, a dilatory motive, prejudice or futility*. Rather, the Court finds that a request for leave to amend a complaint that is merely embedded in a footnote of an opposition memorandum to a motion to dismiss is improper." 2019 WL 4447545, at *14 (emphasis added).

{00027410. }    6

parties were still engaged in initial discovery at the time of the amendment such that the non-moving party would not "be deprived of the chance to present facts or evidence"); see Motion at 10-11 (citing cases).  The claims remain the same, and in Defendants' Adversary Proceedings, no depositions have been taken, no witnesses have been rendered unavailable by the timing of the Motion, and no expert discovery has occurred.

12.   Defendants argue that because certain depositions have occurred in *other Adversary Proceedings* brought by the Trustee where discovery was not stayed Defendants are somehow prejudiced, but the limited authority Defendants purport to cite in support of that argument does not concern discovery that occurred in *other actions* and is patently inapposite. See Panetta v. SAP Am., Inc., 294 Fed. App'x 715, 718 (3d Cir. 2008) (plaintiff sought to add a new claim at a "late stage in the litigation" which "would deprive the defendants of discovery or require them to repeat processes that were already complete"); Cornell & Co., Inc. v. Occupational Safety & Health Rev. Comm'n, 573 F.2d 820, 824 (3d Cir. 1978) (finding undue prejudice where there had been a prior amendment, the proposed new amendment "completely changed the nature of the charges" a matter of "a few days before the hearing," and the timing of the proposed latest amendment meant that "indispensable" job site witnesses who were "transient[]" workers and whose testimony was needed to address the new theory of liability could not be obtained, a result "caused solely by the delay" in seeking the amendment); United Tax Group, 2018 WL 1135496, at *6 ("new assertion of actual fraud is fundamentally different than [plaintiff's] assertion of constructive fraud," the "elements of the claims are different," and, under the circumstances, where the "loan participants live in Canada and are of advancing age and failing health" the amendment was unduly prejudicial).

13. In the only authority cited for the Schiff Hardin Defendants' proposition that "substantial effort and expense" incurred in briefing their motion to dismiss can even potentially "support" a denial of leave (Schiff Hardin Defendants' Opp. Br. at 9-10), the party had already effectively made three attempts at pleading, and "'three attempts at a proper pleading is enough.'" Rolo v. City Investing Co. Liquidating Trust, 155 F.3d 644, 655 (3d Cir. 1998), abrogation on other grounds recognized by Forbes v. Eagleson, 228 F.3d 471 (3d Cir. 2000).

14. The Schiff Hardin Defendants' argument that "Defense costs could have been substantially reduced if Plaintiff had amended his complaint (which he had an absolute right to do) promptly after receiving Defendants' motion to dismiss" (Schiff Hardin Defendants' Opp. Br. at 9) implies that the Schiff Hardin Defendants agree that the PAC states a claim and supports the notion that the Trustee's filing is thus not futile.

15. The Schiff Hardin Defendants' argument, advanced in a footnote, that "None of Plaintiff's cited cases involves a situation where a defendant was denied an opportunity to participate in key, ongoing discovery" (Schiff Hardin Defendants' Opp. Br. at 11 n.5) is irrelevant because there has been no "ongoing discovery," "key" or otherwise, in these Adversary Proceedings.

### III. Amending The Complaint Would Not Be Futile

16. "An amendment is futile if the complaint, as amended, would fail to state a claim upon which relief could be granted." In re Charys Holding Co., 443 B.R. at 642 (internal quotation marks omitted). The PAC addresses the deficiencies the Court identified in the original Complaint and states a claim. See Motion at 4 (citing cases).

#### A. The PAC Relates Back To The Original Complaint

17. The PAC asserts the same causes of action as the original Complaint and only pleads in more detail allegations concerning the financial condition of F-Squared. Rule

{00027410. }                                            8

15(c)(1)(B) of the Federal Rules of Civil Procedure provides that an "amendment to a pleading relates back to the date of the original pleading when: . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading . . . ."

18.    Application of Rule 15(c)(1)(B) "normally entails a 'search for a common core of operative facts in the two pleadings.'" Glover v. F.D.I.C., 698 F.3d 139, 145 (3d Cir. 2012) (quoting Bensel v. Allied Pilots Ass'n, 387 F.3d 298, 310 (3d Cir. 2004)). The "touchstone for relation back is fair notice," thus "amendments that significantly alter the nature of a proceeding by injecting new and unanticipated claims are treated far more cautiously." Id. at 146 (internal quotation marks omitted); In re United Tax Group, LLC, 2018 WL 1135496, at *11-12 (same). Where the amendment "merely expounds upon and further details the factual scenario and breach claims that were roughly sketched in its original Complaint" the plaintiff's amendment relates back. Bensel, 387 F.3d at 310. The Third Circuit in Glover reiterated that "in *Bensel*, we approved relation back of amendments that 'restate the original claim with greater particularity or amplify the factual circumstances surrounding the pertinent conduct.'" 698 F.3d at 146 (quoting Bensel, 387 F.3d at 310). In Glover, the original complaint, unlike the amended pleading, "gave no suggestion that the Udren Defendants were culpable in any way for the conduct attributed to WaMu or Wells Fargo," thus those defendants were not provided with the requisite fair notice of the amended complaint for relation back purposes. Id. at 146-48.

19.    The Second Circuit in Slayton v. Am. Exp. Co., 460 F.3d 215 (2d Cir. 2006), has provided useful guidance. Explaining that the "purpose of Rule 15 is to provide maximum opportunity for each claim to be decided on its merits rather than on procedural technicalities," "where the amended complaint does not allege a new claim but renders prior allegations more

definite and precise, relation back occurs." Slayton, 460 F.3d at 215 (internal quotation marks omitted); see id. ("For example, where an initial complaint alleges a 'basic scheme' of defrauding investors by misrepresenting earnings and profitability, an allegation of accounts receivable manipulation in an amended complaint will relate back because it is a 'natural offshoot' of that scheme. And where an initial complaint alleges 'inadequate internal controls' leading to overstatement of accounts receivable, a defendant is on notice of a claim in an amended complaint that it improperly recognized revenues and failed to establish sufficient reserves for doubtful accounts in violation of GAAP and industry standards."). In Slayton, "the original complaint alleged that Amex misstated and/or omitted material facts in its filings with the SEC in violation of SEC regulations requiring accurate representations of Amex's operations and financial conditions." Id. at 229. "Although these were very general allegations, the assertions in the amended complaint that some of these misstatements and/or omissions relate to valuation and accounting irregularities simply delineate with more detail those general allegations." Id. at 229.

20.     The same is the case here. Unlike in In re Rouge Indus., Inc., 2006 WL 148946, at *4 (Bankr. D. Del. Jan. 19, 2006), where different transfers were at issue in the amended complaint, here, the PAC asserts the same causes of action based on the same transfers as in the original Complaint. And as was the case in Slayton, the PAC delineates with more detail F-Squared's insolvent financial condition. See Motion at 5-8 (summarizing the detailed allegations concerning F-Squared's financial condition in the PAC).

     **B.**    **The PAC Plausibly Alleges F-Squared's Insolvency**

21.     As set forth in detail in the Motion, the PAC's allegations detail F-Squared's comparative assets and liabilities, including F-Squared's balance sheet and how and why its audited balance sheet was inaccurate; its liabilities to the SEC; its indemnification liabilities; its

breach of contract and misconduct liabilities; and allege with specificity F-Squared's appropriately adjusted balance sheet and its insolvency at the time of the Transfers. See Motion at 5-8.

22.   Defendants' arguments that the PAC fails plausibly to allege F-Squared's insolvency are largely summary judgment arguments only without the benefit of a developed record and without the benefit of expert discovery and testimony. Defendants argue the PAC uses "hindsight bias" or treats contingent liabilities as non-contingent in its allegations. The McClelland Defendants argue, for example, that the Trustee "misapplies hindsight in a way that warps his analysis of what a reasonable management team at F2 knew or should have known when assessing the company's assets and liabilities." McClelland Defendants Opp. Br. at 4. Not so. As in SEC v. Antar, 120 F. Supp. 2d 431, 443 (D. N.J. 2000), for example, where "the SEC's claim was based on Sam M.'s securities fraud in the 1980s," and thus the court found that "Sam M. possessed this debt at the time of all of the 1991 and 1997 transfers," so, too, here: F-Squared possessed the debt or liabilities alleged in the PAC at the time of the Transfers in light of its admitted bad acts. That debts are unliquidated (*i.e.*, all of the elements for liability exist, but the precise value may not be known) does not make them contingent or render taking them into account a misapplication of hindsight. See In re RNI Wind Down, 369 B.R. 174, 183 (Bankr. D. Del. 2007); In re W.R. Grace & Co., 281 B.R. 852, 865 (Bankr. D. Del. 2002) (distinguishing cases like those relied on by Defendants here that involved "truly contingent liabilities" such as a loan failing to close or guarantees by debtors that were triggered by a later default from cases where "[e]very element of liability was already present and had been for many years"); see also Gillman v. Scientific Res. Products Inc. of Del. (In re Mama D'Angelo, Inc.), 55 F.3d 552, 556 (10th Cir. 1995) ("it is not improper hindsight for a court to attribute current circumstances

{00027410. }                                                11

which may be more correctly defined as current awareness or current discovery of the existence of a previous set of circumstances"); <u>Coated Sales, Inc. v. First Eastern Bank, N.A. (In re Coated Sales)</u>, 144 B.R. 663, 668 (Bankr. S.D.N.Y. 1992) (same).

23.  The PAC's insolvency allegations take this "current awareness" of F-Squared's true liabilities at the time of the transfers at issue into account. The Schiff Hardin Defendants quibble that the PAC "fails to allege an appropriate discount factor to be applied." Schiff Hardin Defendants' Opp. Br. at 19. If the Schiff Hardin Defendants wish to dispute "appropriate discount factors" to be applied to F-Squared's balance sheet the parties can engage on such issues at the appropriate time, on a developed factual record, and with the benefit of expert discovery and testimony. That F-Squared's assets should be discounted and its liabilities upwardly adjusted in light of what all now know to have been true—and admitted—at the time of the Transfers is what is specifically, and plausibly, alleged in the PAC, and such appropriate adjustments as alleged reflect F-Squared's insolvency.

### IV.  "Judicial Economy And Equitable Factors" Weigh In Favor Of The Motion

24.  The McClelland Defendants assert that judicial economy and other equitable factors suggest the Trustee's Motion should be denied. McClelland Defendants' Opp. Br. at 20-22. The McClelland Defendants' unwarranted attacks on the Trustee's motives and actions notwithstanding, the facts as alleged in the PAC (attached as Exhibit 1 to the Motion) are otherwise. F-Squared *admitted* to fraudulent marketing and willful violations of the United States securities laws over a multi-year period. Mot., Ex. 1 (PAC) at ¶ 1. The Liquidating Trust was established pursuant to the Bankruptcy Court-approved Plan, and the Trustee was tasked to prosecute, settle, abandon or compromise the "Retained Causes of Action" pursuant to the Plan. <u>Id.</u> at ¶¶ 75-77.

25. The McClelland Defendants seek to fault the Trustee for defending his original Complaint and categorically assert that "[i]t cannot be that the Trustee did not recognize the flawed nature of his initial pleading." McClelland Defendants' Opp. Br. at 21. But, as set forth above, the Third Circuit in <u>Victaulic</u> has explained that "in the context of a typical Rule 12(b)(6) motion, a plaintiff is unlikely to know whether his complaint is actually deficient—and in need of revision—until after the District Court has ruled." 839 F.3d at 250. Moreover, a plaintiff may "fully defend[] their original consolidated amended complaint, as well as alternatively ask[] for permission to amend." <u>In re Digital Island Sec. Litig.</u>, 2002 WL 31667863, at *2 n.4. There is nothing inherently inequitable or nefarious about opposing a motion to dismiss, and the law does not require that upon the filing of a motion to dismiss a plaintiff must run to amend. <u>Victaulic</u>, 839 F.3d at 249 ("the mere fact that a defendant files a motion to dismiss is not necessarily sufficient to put a plaintiff on notice that the court will find his complaint to be deficient"). Indeed, the Third Circuit has recognized that "[o]ne of the consequences of the Supreme Court's decisions in *Twombly* and *Iqbal* is a general increase in the number of motions to dismiss filed against plaintiffs," that "plaintiffs are now twice as likely to face a motion to dismiss," and remarked that it is "highly unlikely that in the years since *Twombly* was decided, plaintiffs' complaints are dramatically worse or less meritorious." <u>Id.</u>

26. Also under the ambiguous rubric of "judicial economy and equitable factors," the McClelland Defendants advance as a purported ground for denying the Trustee's Motion in these Adversary Proceedings that the Trustee took certain positions the McClelland Defendants consider inconsistent in other litigation "seeking to establish F2's coverage for the SEC's investigation." McClelland Defendants' Opp. Br. at 22. That litigation concerned whether F-Squared had notice of a "Claim" (as defined in F-Squared's claims-made insurance policy) as to

a particular policy year, as a result of a subpoena it received from the SEC prior to the commencement of that policy year. That specific contractual insurance issue is distinct from insolvency issues (that is, the fact that liabilities owing to F-Squared's admitted fraud rendered it insolvent at the times of the Transfers, as alleged in the PAC) and a red herring with respect to the Motion.

27. Contrary to the McClelland Defendants' attacks on the Trustee and litigation procedure, the McClelland Defendants' "judicial economy and equitable factors" are not grounds for denying the Motion, but rather support granting the Motion.

## CONCLUSION

28. For the foregoing reasons, and the reasons set forth in the Motion, the Trustee respectfully requests that the Motion be granted in its entirety, the Trustee be permitted to file the proposed Amended Complaint, and the Amended Complaint be deemed to have been filed, for statute of limitations purposes, as of the date of the Complaint.

Dated: January 10, 2020
      Wilmington, Delaware

**THE ROSNER LAW GROUP LLC**

*/s/ Jason A. Gibson*
Frederick B. Rosner (DE 3995)
Jason A. Gibson (DE 6091)
824 Market Street, Suite 810
Wilmington, DE 19801
Telephone: (302) 777-1111
Email: rosner@teamrosner.com
      gibson@teamrosner.com

-and-

**BROWN RUDNICK LLP**
William R. Baldiga, Esq.
Sunni P. Beville, Esq.
Sharon I. Dwoskin, Esq.
One Financial Center
Boston, MA 02111
Telephone: (617) 856-8200
wbaldiga@brownrudnick.com
sbeville@brownrudnick.com
sdwoskin@brownrudnick.com

-and-

D. Cameron Moxley, Esq.
Seven Times Square
New York, NY 10036
Telephone: (212) 209-4800
cmoxley@brownrudnick.com

*Counsel for the F2 Liquidating Trust*

63606547 v2

{00027410. }    15